1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                          )
JAMES JENSEN,                             )        No. C12-0202RSL
                                          )
                    Plaintiff,            )
                                          )
        v.                                )
                                          )        ORDER GRANTING DEFENDANT'S
ASSOCIATED MATERIALS, LLC,                )        MOTION FOR SUMMARY
                                          )        JUDGMENT
                    Defendant.            )
_____   )

14        This matter comes before the Court on "Defendant's Motion for Summary

15  Judgment" on plaintiff's claim of age discrimination under the Washington Law Against

16  Discrimination ("WLAD"), RCW 49.60 et seq.  Summary judgment is appropriate when,

17  viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute

18  as to any material fact that would preclude the entry of judgment as a matter of law.  L.A.

19  Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012).  The party seeking

20  summary dismissal of the case "bears the initial responsibility of informing the district court of

21  the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and identifying

22  those portions of the materials in the record that show the absence of a genuine issue of material

23  fact (Fed. R. Civ. P. 56(c)(1)).  Once the moving party has satisfied its burden, it is entitled to

24  summary judgment if the non-moving party fails to identify specific factual disputes that must be

25  resolved at trial.  Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1059 (9th Cir. 2012).

26

The mere existence of a scintilla of evidence in support of the non-moving party's position will not preclude summary judgment, however, unless a reasonable jury viewing the evidence in the light most favorable to the non-moving party could return a verdict in its favor. U.S. v. Arango, 670 F.3d 988, 992 (9th Cir. 2012).

Taking the evidence presented in the light most favorable to plaintiff[1] and having heard the arguments of counsel, the Court finds as follows:

The WLAD makes it an unfair practice for an employer "to discharge or bar any person from employment because of age . . . ." RCW 49.60.180(2). To establish a *prima facie* case of age discrimination under state law, plaintiff must demonstrate that he (a) is within the statutorily protected age group, (b) was discharged, (c) was satisfactorily performing his job, and (d) was replaced by a younger person. Rice v. Offshore Sys., Inc., 167 Wn. App. 77, 88 (2012).[2] Plaintiff's initial burden is to show that the employer's conduct, if left unexplained, gives rise to an inference that it is more likely than not that such actions were "based on a discriminatory criterion illegal under the Act." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 575 (1978). See

---

[1] The parties agree that plaintiff was not terminated as a result of his customer service problems and that he is not asserting any claims related to the reassignment of accounts that occurred in the first half of 2009. The Court therefore need not determine the admissibility of plaintiff's narrative regarding those events.

Plaintiff's motion to strike arguments raised in reply (Dkt. # 24) is DENIED. Defendant was not required to anticipate plaintiff's pretext arguments in its motion and properly responded to the proffered evidence in reply.

[2] Washington courts have adopted the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to evaluate claims of discrimination that are based on circumstantial, rather than direct, evidence of discriminatory motive. Fulton v. State, 169 Wn. App. 137, 148 at n.17 (2012). Plaintiff argues that his supervisor directly manifested discriminatory intent when he attributed a mix up in names to his "old brain" in December 2008 and asked plaintiff about his retirement plans in June 2009. Both of these remarks are ambiguous as to Hatfield's state of mind, and neither is directly related to Hatfield's motivation in September 2009. The McDonnell Douglas analysis therefore applies.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -2-

1   also Bodett v. CoxCom, Inc., 366 F.3d 736, 743 (9th Cir. 2004).  Plaintiff's burden in

2   establishing a *prima facie* case is minimal and need only give rise to an inference of unlawful

3   discrimination.  If the elements of the *prima facie* showing are satisfied, plaintiff is entitled to a

4   presumption that his employer unlawfully discriminated against him.  Lyons v. England, 307

5   F.3d 1092, 1112 (9th Cir. 2002).

6          Once a *prima facie* case has been presented, the burden shifts to defendant "to

7   articulate a legitimate, nondiscriminatory reason" for the adverse employment decision.  Aragon

8   v. Republic Silver State Disposal, Inc., 292 F.3d 654, 658 (9th Cir. 2002).  If defendant is able to

9   rebut the presumption of discrimination raised by the *prima facie* showing, plaintiff may avoid

10  summary judgment by producing enough evidence to allow a reasonable factfinder to conclude

11  that "defendant's articulated reasons (1) had no basis in fact, (2) were not really motivating

12  factors for the decision, (3) were not temporally connected to the adverse employment action, or

13  (4) were not motivating factors in employment decisions for other employees in the same

14  circumstances."  Scrivener v. Clark College, __ Wn. App. __, 2013 WL 4746854, at *3 (Sept. 4,

15  2013).[3]

16         Plaintiff has provided evidence that he falls within the protected age group

17  (defined in RCW 49.44.090(1) as employees 40 years of age and older), that he was discharged,

18  and that he was replaced by a younger person.  Although there is significant evidence that

19  plaintiff's direct supervisor, his Senior Vice President for Sales, and certain customers were

20

21         [3] Under federal law, plaintiffs can avoid judgment and overcome defendants' legitimate
    nondiscriminatory reason for their actions by presenting evidence that either (1) the proffered reasons
22  for the adverse employment action were false or (2) a discriminatory reason more likely motivated the
    employer.  Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).  "A plaintiff may not[,
23  however,] defeat a defendant's motion for summary judgment merely by denying the credibility of the
    defendant's proffered reason for the challenged employment action. . . .  Nor may a plaintiff create a
24  genuine issue of material fact by relying solely on the plaintiff's subjective belief that the challenged
    employment action was unnecessary or unwarranted."  Cornwell v. Electra Cent. Credit Union, 439 F.3d
25  1018, 1028 n.6 (9th Cir. 2006) (citations omitted).

26
    ORDER GRANTING DEFENDANT'S
    MOTION FOR SUMMARY JUDGMENT          -3-

dissatisfied with plaintiff's job performance during the last few months of his employment, the supervisor, Gary Hatfield, affirmatively decided that the performance issues did not merit termination as of July 2009.  The Court will therefore assume, for purposes of this motion, that plaintiff was satisfactorily performing his job at least into July 2009.  Plaintiff has raised a *prima facie* case of age discrimination.

In response, defendant has articulated a "legitimate, non-discriminatory reason for termination."  Grimwood, 110 Wn.2d at 364.  On September 16, 2009, plaintiff sent an email to an important customer stating:

> I wanted to personally apologize to you and the rest of the centex team.  For more than 30 years I have prided myself and built a reputation of giving the best service to my customers.  Due to a myriad of issues not the least of which attempted restructuring and others has made it challenging to say the least in providing what I have been so proud of all my working life.  I take this as a failure and wanted you to know I put in great effort without the desired results.  I hope there are not too many bad feelings over this and I pledge to do all I can to make the transition go smoothly.

Decl. of Laura T. Morse (Dkt. # 18), Ex. Q.  The customer who received this email thought it "reveal[ed] a disconnect between Jim Jensen's ownership and management of the account and solving the problems" and "put[] me in a position that I didn't feel like I had options or felt like I had to solve those problems."  Decl. of Laura T. Morse (Dkt. # 18), Ex. D at 20.  He contacted Hatfield to let him know about the email and his concerns.  Decl. of Laura T. Morse (Dkt. # 18), Ex. C at 126.  Hatfield determined that the email was grounds for dismissal – a decision with which human resources and his Senior Vice President for Sales concurred – and fired plaintiff.  Decl. of Laura T. Morse (Dkt. # 18), Ex. C at 131-33; Ex. O at 80-81.

Because the presumption of discrimination raised by the *prima facie* showing has "fulfilled its role of forcing the defendant to come forward with some response, [the presumption] simply drops out of the picture" at this point in the analysis.  Hill v. BCTI Income

1  Fund-I, 144 Wn.2d 172 (2001) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11

2  (1993)), overruled on other grounds, McClarty v. Totem Elec., 157 Wn.2d 214 (2006).  In order

3  to avoid summary judgment, plaintiff must present enough evidence to allow a reasonable

4  factfinder to conclude that the employer's non-discriminatory justification for terminating his

5  employment was merely a pretext for age discrimination.  Plaintiff is not necessarily required to

6  produce evidence beyond that which established the *prima facie* case:  if, in light of all of the

7  evidence, there is a genuine issue of material fact regarding the employer's motivation, the issue

8  is one for the jury to decide.  Rice, 167 Wn. App. at 89.

9          Plaintiff argues that his September 2009 email was simply an excuse defendant

10  used to terminate his employment and that the real reason was his age.  The basic time line of

11  events does not support plaintiff's theory:  had Hatfield decided plaintiff was too old and been

12  looking for an excuse to fire him, there was a series of unsatisfactory customer interactions and a

13  blown marketing opportunity (coupled with instructions to terminate plaintiff) that would have

14  provided ample justification for termination months earlier.  In support of his pretext argument,

15  plaintiff points out that (a) other Associated Materials employees had apologized to customers

16  and not been terminated and (b) Hatfield made ageist comments evincing his true motivations.

17          Plaintiff's September 2009 email is fundamentally different than any other apology

18  in the record.  See Decl. of James Jensen (Dkt. # 20-2), Exs. I, J, U, and V.  Rather than

19  apologize as a representative of the company, plaintiff chose to speak on his own behalf, clearly

20  seeking to protect and/or rehabilitate his own reputation while blaming the company for any

21  errors and shortcomings.  The email was not prompted by the type of customer complaint or

22  emergent issue that prompted the other communications presented to the Court.  Because no

23  acknowledgment of error or apology was compelled by the situation, plaintiff's email reads as

24  nothing more than a gratuitous lament about the difficulties of working within Associated

25  Materials' restructured system.  Unlike the other apologies in the record, plaintiff does not thank

26

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -5-

1    Centex for its business, compliment it as a loyal business partner, or otherwise attempt to build

2    on an existing relationship.  In fact, with the exception of the last clause in which plaintiff

3    pledges to help shift defendant's business to Everclear, plaintiff offers nothing constructive or

4    positive at all:  there is no plan of corrective action or promise that Associated Materials will

5    improve or make the perceived problem right.

6                   Every person who reviewed the email – other than plaintiff – thought it was

7    inappropriate and not in Associated Materials' best interests.  Eric Nordling, the Centex

8    representative who received the email, thought it presented "a theme of apology and defeatism"

9    and did not comport with his expectations of an account manager.[4]  Errata to the Decl. of Laura

10   T. Morse (Dkt. # 26), Ex. D at 22-23.  He was so unhappy with the communication that he called

11   plaintiff's boss, who had not been copied on the email.  When Hatfield saw the email, he thought

12   it was grounds for dismissal.  Decl. of Alex J. Higgins (Dkt. # 20-1), Ex. D at 130-31.  The

13   human resources folks, Marsha Larson and John Hausmesser, were not happy about the email

14   and had the impression that plaintiff "was throwing [Associated Materials] under the bus to the

15   customer."  Decl. of Alex J. Higgins (Dkt. # 20-1), Ex. D at 131; Decl. of Laura T. Morse (Dkt.

16   # 18), Ex. O at 80-81.  David King, Associated Materials' Senior Vice President for Sales, took

17   issue with the fact that plaintiff had sent the apology directly to the customer without copying

18   Hatfield and interpreted the email as "basically saying that, hey, the company's not – not living

19   up to their obligation.  I'm doing all I can. This is about – this is about [plaintiff], not about the

20   business and so I would have a problem with that."  Decl. of Laura T. Morse (Dkt. # 18), Ex. B

21   at 45.  There is no evidence that any other apology made to a customer, whether written or oral,

22

23           [4] "I mean that my expectation of an account manager is they – if there's issues within that
24   organization – within his or her organization, as an account manager, that the – that they take
     responsibility for solving those and presenting a confident plan to me as the client that they'll solve
25   those problems and that they've got a plan to solve those problems."  Errata to the Decl. of Laura T.
     Morse (Dkt. # 26), Ex. D at 22.
26
     ORDER GRANTING DEFENDANT'S
     MOTION FOR SUMMARY JUDGMENT            -6-

1   was similar to that issued by plaintiff or prompted a comparable customer reaction. Plaintiff has

2   therefore failed to show that other employees, whether inside or outside the protected class,

3   engaged in similar conduct and were treated differently (*i.e.*, not terminated). The fact that other

4   employees who issued more appropriate apologies for Associated Materials' customer service

5   problems were not fired does not in any way support plaintiff's claim that his age was a

6   substantial factor in his termination.

7          Plaintiff attempts to raise an inference of discriminatory motive with evidence that

8   Hatfield attributed a mix up that he made in names to his "old brain" in December 2008 and

9   asked plaintiff about his retirement plans in June 2009.[5] The "old brain" comment was made in

10  an email to King months before Hatfield began supervising plaintiff. The comment had nothing

11  to do with plaintiff and very little to do with Hatfield: the surrounding context leaves little doubt

12  that Hatfield was simply excusing an error, not expressing doubts about his cognitive abilities

13  due to age (or any other reason). Such self-denigrating statements, having nothing to do with

14  plaintiff's qualifications as an employee or the adverse employment action at issue, are simply

15  stray remarks that fail to raise an inference of discriminatory motive. Griffith v. Schnitzer Steel

16  Indus., Inc., 128 Wn. App. 438, 458 (2005); Domingo v. Boeing Emps. Credit Union, 124 Wn.

17  App. 71, 90 (2004).

18         With regards to the inquiry regarding retirement, plaintiff appears to be arguing

19  that there is a blanket prohibition on asking an employee whether or when he is planning to

20  retire. There is not. In many instances, an employer has a legitimate interest in knowing ahead

21  of time when a position will have to be filled or what cost-savings are on the horizon. See Ray

22

23         [5] In his declaration, plaintiff mentions two other conversations in which Hatfield asked him if he
24  were going to quit. Decl. of James Jensen (Dkt. # 20-2) at ¶ 7 and ¶ 28. In both situations, plaintiff had
    received bad news about his employment situation and was unhappy as a result. An inquiry regarding
25  whether plaintiff intended to stay in light of difficulties in the workplace has nothing to do with his age
    and does not raise an inference of age discrimination.
26
    ORDER GRANTING DEFENDANT'S
    MOTION FOR SUMMARY JUDGMENT          -7-

v. Tucson Old Pueblo Credit Union, 228 Fed. App'x. 682, 683 (9th Cir. 2007); Colosi v. Electri-Flex Co., 965 F.2d 500, 502 (7th Cir. 1992).  In other instances, an employer might simply hope to avoid contentious personnel issues by suggesting that an employee consider retirement instead of attempting to correct performance problems.  See Ziegler v. Beverly Enters.-Minn., Inc., 133 F.3d 671, 676 (8th Cir. 1998).  Both interests were likely at work here.  Hatfield apparently asked plaintiff about his retirement plans a few months after they began working together and two customer calls had not gone as Hatfield had hoped.  Plaintiff responded that he had no intention of retiring anytime soon.  Other than the fact that the word "retirement" is generally associated with attaining a certain age, there is no indication that plaintiff felt he was being forced into retirement, that Hatfield was presenting plaintiff with a choice between retiring and being fired, that Hatfield thought plaintiff was too old to do his job, or that the exchange had anything to do with Hatfield's decision-making process three months later.  Absent some indication that the proximity of retirement had a motivating influence on the decision to terminate, simply asking an employee about his retirement plans does not raise an inference that plaintiff's age is the reason he is no longer employed by Associated Materials.[6]

       After considering all of plaintiff's evidence as a whole, the Court finds that a jury could not reasonably infer that plaintiff's age was a substantial factor in Hatfield's decision to terminate plaintiff's employment.  Defendant's motion for summary judgment (Dkt. # 17) is therefore GRANTED.  The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff.

---

[6]  In Shelley v. Geren, 666 F.3d 599 (9th Cir. 2012), on the other hand, members of the hiring committee requested information regarding the projected retirement dates of the applicants during the hiring process, raising an inference that the information was relevant to their decisions.  No such inference would be reasonable in the circumstances presented here.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT            -8-

1              Dated this 7th day of November, 2013.

2

3                             Robert S. Lasnik
                             United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT      -9-